IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL TORY HAUGLAND,<br><br>Defendant. | Case No. 3:22-cr-184<br><br>**PLEA AGREEMENT** |

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America, by its attorneys, Mac Schneider, United States Attorney for the District of North Dakota, and Alexander J. Stock, Assistant United States Attorney; Defendant, MICHAEL TORY HAUGLAND; and Defendant's counsel, JEFF BREDAHL, agree to the following:

1. Defendant acknowledges the Indictment charges a violation of Title 21, United States Code, Section 841 and contains a forfeiture allegation.

2. Defendant has read the charge and forfeiture allegation and Defendant's attorney has fully explained the charge to Defendant.

3. Defendant fully understands the nature and elements of the charged crime and forfeiture allegation

4. Defendant will voluntarily plead guilty to Count One of the Indictment and admit to the forfeiture allegation.

5. The parties agree this Plea Agreement shall be filed as part of the Court record and be governed by Federal Rule of Criminal Procedure 11(c). The parties

*[Handwritten: Read and explain to me by my attorney Jeff Bredahl, MTH 10-26-23]*

specifically agree that Rule 11(c)(1)(C) does not apply. If the United States makes the non-binding recommendations specified in this Plea Agreement, then Defendant acknowledges that this agreement will have been fulfilled. Except as provided in Rule 11(c)(5), the Court's refusal to accept any or all terms of the Plea Agreement does not give Defendant a right to withdraw Defendant's guilty plea.

6. Defendant will plead guilty because Defendant is in fact guilty of the charge. In pleading guilty to Count One, Defendant acknowledges that:

> From in or before June 2021 to the present, in the Districts of North Dakota, Minnesota, Montana, Idaho, Utah, Nevada, California, and elsewhere, MICHAEL TORY HAUGLAND did knowingly and intentionally combine, conspire, confederate, and agree with others, both known and unknown to the grand jury, to possess with intent to distribute and distribute controlled substances, namely, methamphetamine, a Schedule II controlled substance; fentanyl, a Schedule II controlled substance; and marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 841(b)(1)(C), and Title 18, United States Code, Section 2. Drug Quantity. The grand jury finds the amount involved in the conspiracy attributable to each of these defendants as a result of each defendant's own conduct, and the conduct of other conspirators reasonably foreseeable to the defendants, is 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(A).

> Defendant acknowledges sufficient facts exist to sustain a finding of guilt beyond a reasonable doubt in violation of Title 21, United States Code, Section 846; Pinkerton v. United States, 328 U.S. 640 (1946). Defendant acknowledges he is guilty for his role in drug conspiracy that involved 500 grams or more of methamphetamine, and this drug quantity is either directly attributable to him and/or reasonably foreseeable to him. Defendant, however, reserves the right to object to the overt acts listed in the factual basis below inasmuch as that while he does not dispute these overt acts may have occurred, he disputes his involvement in, knowledge thereof, and/or their reasonable foreseeability to him for purposes of calculating drug quantity under his "relevant conduct" under the Sentencing Guidelines.

> In furtherance of this conspiracy and to effect and accomplish the objects of

*Read by att. Jeff Brendahl*
*MTH 10-26-23*

it, one or more of the conspirators committed the following overt acts: 1. It was a part of said conspiracy that the defendants and others, both known and unknown to the grand jury, would and did possess with intent to distribute and did distribute mixtures and substances containing detectable amounts of methamphetamine, fentanyl, and marijuana within the states of North Dakota, Minnesota, Montana, Idaho, Utah, Nevada, California, and elsewhere, including, but not limited to the following: (a) On or before July 22, 2021, coconspirators, individually, and by aiding and abetting, possessed with intent to distribute approximately 10 pounds of methamphetamine in and near West Fargo, North Dakota; (b) On or before December 12, 2021, a coconspirator possessed with intent to distribute approximately 3 pounds of methamphetamine and 500 pills containing fentanyl in and near Fargo, North Dakota; (c) On or about January 12, 2022, a coconspirator possessed with intent to distribute approximately 1.5 pounds of methamphetamine in Fargo, North Dakota; (d) On or about January 25, 2022, a coconspirator possessed with intent to distribute approximately 9 pounds of methamphetamine in and near Hardin, Montana; (e) On or about February 9, 2022, a coconspirator possessed with intent to distribute approximately 1 pound of methamphetamine in and near Fargo, North Dakota, and Moorhead, Minnesota; (f) On or about February 24, 2022, a coconspirator, possessed with intent to distribute approximately 17 grams of methamphetamine in Fargo, North Dakota; (g) On or about February 24, 2022, coconspirators, individually, and by aiding and abetting, possessed with intent to distribute approximately 75 grams of methamphetamine in Fargo, North Dakota; (h)On or before March 19, 2022, a coconspirator distributed approximately 89 grams of methamphetamine in and near Fargo, North Dakota; (i)On or about June 13, 2022, a coconspirator possessed with intent to distribute approximately 39 grams of methamphetamine and 14 pills containing fentanyl in Fargo, North Dakota; (j) On or about July 7, 2022, a coconspirator possessed with intent to distribute approximately 14 grams of methamphetamine in and near Jamestown, North Dakota; (k) On or about August 6, 2022, coconspirators individually, and by aiding and abetting, possessed with intent to distribute approximately 114 grams of methamphetamine in and near Devils Lake, North Dakota; (l) On or about August 21, 2022, a coconspirator possessed with intent to distribute approximately 4 pounds of methamphetamine in and near Bismarck, North Dakota; (m) On or about September 1, 2022, a coconspirator possessed with intent to distribute approximately 10 pounds of methamphetamine in and near Bismarck, North Dakota; (n) On or about September 1, 2022, coconspirators individually, and by aiding and abetting, possessed with intent to distribute approximately 4 pounds of methamphetamine, 3,000 pills containing fentanyl, and 9 pounds of marijuana in and near Williston, North Dakota;

*[Handwritten annotation: Read by Att. Jeff Bredahl / MTH 10-26-23]*

(o) On or about September 4, 2022, a coconspirator possessed with intent to distribute approximately 10 grams of methamphetamine in and near Idaho Falls, Idaho; 2. It was further a part of said conspiracy that the defendants and others would and did attempt to conceal their activities; 3. It was further a part of said conspiracy that the defendants and others would and did use telecommunication facilities, including cellular telephones, to facilitate the distribution of methamphetamine, fentanyl, and marijuana; 4. It was further a part of said conspiracy that the defendants and others would and did use United States currency in their drug transactions; 5. It was further a part of said conspiracy that the defendants and others would and did possess, buy, sell, obtain, and trade firearms and ammunition to, for, and on behalf of other conspirators, both known and unknown to the grand jury, to protect their supply of controlled substances, to facilitate drug transactions, and to exchange as payment for controlled substances; 6. It was further a part of said conspiracy that one or more conspirators threatened harm, threatened violence, and used intimidation to protect their criminal activities in North Dakota, including, but not limited to the following: On or about August 5-9, 2022, coconspirators conspired to murder another coconspirator in Fargo, North Dakota; 7. It was further a part of said conspiracy that the defendants and others would and did use, carry, and possess firearms and ammunition during, in relation to, and in furtherance of the conspiracy; 8. It was further a part of said conspiracy that one or more conspirators received money wire transfers that were proceeds of methamphetamine, fentanyl, and marijuana sales; 9. It was further a part of said conspiracy that one or more conspirators sent money wire transfers that were payment for and proceeds of methamphetamine, fentanyl, and marijuana sales; 10. It was further a part of said conspiracy that one or more conspirators traveled between the states of North Dakota, Montana, Idaho, Utah, Nevada, and California to obtain, transport, and distribute methamphetamine, fentanyl, and marijuana; 11. It was further a part of said conspiracy that one or more conspirators collected money from others to purchase methamphetamine, fentanyl, and marijuana; 12. On or about December 12, 2021, a coconspirator possessed a firearm in furtherance of the conspiracy in Fargo, North Dakota; 13. On or about January 12, 2022, a coconspirator possessed a firearm in furtherance of the conspiracy in Fargo, North Dakota; 14. On or about February 24, a coconspirator possessed a firearm in furtherance of the conspiracy in Fargo, North Dakota; 15. On or about July 7, 2022, a coconspirator possessed a firearm in furtherance of the conspiracy in and near Jamestown, North Dakota; 16. On or before July 23, 2022, coconspirators possessed firearms in furtherance of the conspiracy in and near Belcourt, North Dakota; 17. On or about August 21, 2022, a coconspirator possessed a firearm in furtherance of the conspiracy in and near Bismarck, North Dakota; 18. On or about September 4, 2022, a coconspirator possessed firearms in

4

*Rec'd By attorney Jeff Bredahl*
*MTH 10-26-23*

furtherance of the conspiracy in and near Idaho Falls, Idaho; 19. On or about September 21, 2022, a coconspirator possessed firearms in furtherance of the conspiracy in and near Bismarck, North Dakota; 20. On or about September 21, 2022, a coconspirator possessed firearms in furtherance of the conspiracy in and near Bismarck, North Dakota; 21. On or about September 21, 2022, a coconspirator possessed firearms in furtherance of the conspiracy in and near Belcourt, North Dakota; 22. A coconspirator was an organizer, leader, manager, and supervisor in this conspiracy.

In admitting to the forfeiture allegation, Defendant admits the items listed in the forfeiture allegation (1) are property constituted or derived from any proceeds Defendant and/or his coconspirators obtained, directly or indirectly, as a result of his commission of the drug conspiracy outlined in Count One of the Indictment, and/or the property was used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the drug conspiracy outlined in Count One of the Indictment; and (2) he forfeits his interest to the United States under 21 U.S.C. § 853, 18 U.S.C. §§ 844(c)(1), 924(d)(1), 981(a)(1)(C), and 982(a)(1); 26 U.S.C. § 5872; and 28 U.S.C. § 2461(c)

7. Defendant understands the following maximum penalties apply:

Count One

| | |
|---|---|
| Imprisonment: | Life (min/man 10 years) |
| Fine: | $10,000,000 |
| Supervised Release: | 5 years (5 year min/man) |
| Special Assessment: | $100 |

Defendant agrees to pay the Clerk of United States District Court the special assessment on or before the day of sentencing.

8. Defendant understands that by pleading guilty Defendant surrenders rights, including:

    (a) The right to a speedy public jury trial and related rights as follow:

        (i) A jury would be composed of twelve (12) lay persons selected at random. Defendant and Defendant's attorney would help choose

*Read by Att. Jeff Bredahl*
*MTH 10-26-23*

the jurors by removing prospective jurors "for cause," where actual bias or other disqualification is shown; or by removing jurors without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict. The jury would be instructed that Defendant is presumed innocent and that it could not return a guilty verdict unless it found Defendant guilty beyond a reasonable doubt.

(ii)    If a trial were held without a jury, then the Judge would find the facts and determine whether Defendant was guilty beyond a reasonable doubt.

(iii)   At a trial, whether by a jury or Judge, the United States is required to present witness testimony and other evidence against Defendant. Defendant's attorney can confront and examine them. In turn, the defense can present witness testimony and other evidence. If witnesses for Defendant refuse to appear voluntarily, Defendant can require their attendance through the subpoena power of the Court.

(iv)   At a trial, Defendant has a privilege against self-incrimination; thus, Defendant can decline to testify. No inference of guilt can be drawn from Defendant's refusal to testify. Defendant can choose to testify, but cannot be required to testify.

(b)    Defendant has a right to remain silent. However, under terms of the Plea Agreement, the Judge will likely ask Defendant questions about Defendant's criminal conduct to ensure that there is a factual basis for Defendant's plea.

*Read by Atty. Jeff Bredahl*
*MTH 10-26-23*

9. Defendant understands that by pleading guilty Defendant is giving up all of the rights set forth in the prior paragraph, and there will be no trial. Defendant's attorney has explained those rights, and consequences of Defendant's waiver.

10. The Court shall impose a sentence sufficient to comply with purposes set forth in the Sentencing Reform Act. In doing so, the Court shall consider factors set forth in 18 U.S.C. § 3553(a) and must consult and consider the United States' Sentencing Commission, Guidelines Manual, (Nov. 2021) (USSG). Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation and Pretrial Services Office of the nature, scope, and extent of Defendant's conduct, including all matters in aggravation and mitigation relevant to the issue of sentencing. The United States expressly reserves the right to appeal from an unreasonable sentence.

11. This Plea Agreement is binding only upon the United States Attorney for the District of North Dakota. It does not bind any United States Attorney outside the District of North Dakota, nor does it bind any state or local prosecutor. They remain free to prosecute Defendant for any offenses under their jurisdiction. This Plea Agreement also does not bar or compromise any civil or administrative claim.

12. Defendant understands the United States Attorney reserves the right to notify any local, state, or federal agency by whom Defendant is licensed, or with whom Defendant does business, of Defendant's conviction.

13. The parties agree the base offense level under the Sentencing Guidelines for Defendant's conduct is 30. (USSG § 2D1.1(c)(6) – reasonably foreseeable 500g-1.5KG

*Read by Atty Jeff Bredahl*
*MTH 10-26-23*

meth mixture). The United States reserves the right to argue a higher offense level at sentencing if it is determined through the pre-sentence investigation that Defendant is a "career offender" pursuant to USSG § 4B1.1.

14. At sentencing, United States agrees to recommend a 2-level downward adjustment for acceptance of responsibility, provided Defendant has demonstrated a genuine acceptance of responsibility. (USSG § 3E1.1(a)). The United States further agrees to move for an additional 1-level downward adjustment for timely notifying the United States of Defendant's intention to enter a guilty plea, thus permitting the Court and the United States to allocate their resources efficiently. (USSG § 3E1.1(b)).

15. The parties stipulate and agree that, as of the date of this agreement, Defendant appears to qualify for a 2-level downward adjustment for acceptance of responsibility. However, the government may, in its discretion, contest the adjustment under USSG § 3E1.1(a) should Defendant subsequently fail to continue to accept responsibility by failing to abide by the conditions of release, if applicable; by providing false information to the Court, the probation office, or the United States; by unlawfully using controlled substances; by attempting to obstruct justice; by breaching this Plea Agreement; or by acting in a way that is inconsistent with, or failing to act in any way that is consistent with the granting of the adjustment under USSG § 3E1.1(a).

16. Neither the Court nor the Probation Office is a party to the Plea Agreement. Neither the Court nor the Probation Office is bound by the Plea Agreement as to determining the Sentencing Guideline range. The Court may depart from the applicable guidelines range if the Court, on the record, states factors not contemplated by the

*Read by AUSA Jeff Bradahl / MTH 10-26-23*

Sentencing Guidelines' Commission to justify the departure. Both parties reserve the right to object to any departure. See USSG § 1B1.1, comment. (n.1) (defines "departure"). There may be other adjustments the parties have not agreed upon.

17. At sentencing, the United States will:

(a) Recommend a sentence within the applicable Guideline range, or the minimum mandatory, whichever is greater;

(b) Recommend a reasonable period of supervised release; and

(c) Recommend Defendant pay the $100 special assessment.

18. Defendant acknowledges and understands that if Defendant violates any term of this Plea Agreement, engages in any further criminal activity, or fails to appear for sentencing, the United States will be released from its commitments. In that event, this Plea Agreement shall become null and void at the discretion of the United States, and Defendant will face the following consequences: (1) all testimony and other information Defendant has provided at any time to attorneys, employees, or law enforcement officers of the government, to the Court, or to the Federal Grand Jury, may be used against Defendant in any prosecution or proceeding; and (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against Defendant and to use any information obtained directly or indirectly from Defendant in those additional prosecutions. Nothing in this agreement prevents the United States from prosecuting Defendant for perjury, false statement(s), or false declaration(s), if Defendant commits such acts in connection with this agreement or otherwise.

*Read by Att. Jeff Bredahl*

9

*MTH 10-26-23*

19. Defendant acknowledges the provisions of Title 18, United States Code, Sections 2259 and 3663A, which require the Court to order restitution. Defendant agrees to pay restitution as may be ordered by the Court. Defendant acknowledges and agrees that the Court will order Defendant to make restitution for all loss caused by Defendant's conduct, regardless of whether counts of the Indictment will be dismissed as part of this Plea Agreement. Defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks the Court finds reasonable and appropriate for the prompt payment of any restitution or fine ordered by the Court.

20. The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. Defendant and Defendant's attorney acknowledge that no threats, promises, or representations exist beyond the terms of this Plea Agreement.

21. **Defendant's Waiver of Appeal.** Defendant acknowledges having been advised by counsel of Defendant's rights to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through post-conviction proceedings, including proceedings under 28 U.S.C. § 2255. Defendant understands these rights, and in exchange for the concessions made by the United States in this plea agreement, Defendant hereby knowingly and voluntarily waives these rights, except as specifically reserved herein. Defendant's waiver of these rights includes, but is not limited to, a waiver of all rights to appeal or to collaterally attack: Defendant's conviction or sentence; all non-jurisdictional issues; any assessment, restitution or forfeiture order; the constitutionality of the

*Read by Jolt Bredahl /*
*MTH 10-26-23*

applicable guidelines; and the constitutionality of the statute(s) to which Defendant is pleading guilty or under which Defendant is sentenced, or to argue that the admitted conduct does not fall within the scope of the statute(s). Defendant reserves the right to appeal a sentence of imprisonment imposed above the upper end of the applicable guidelines range and the right to appeal or to collaterally attack the conviction or sentence based on a claim of ineffective assistance of counsel that challenges the validity of the guilty plea or this waiver.

22. By signing this Plea Agreement, Defendant further specifically waives Defendant's right to seek to withdraw Defendant's plea of guilty, pursuant to Federal Rules of Criminal Procedure 11(d), once the plea has been entered in accordance with this agreement. The appellate court will enforce such waivers. Defendant agrees that any attempt to withdraw Defendant's plea will be denied and any appeal of such denial should be dismissed.

23. The Assistant United States Attorney and attorney for Defendant agree to abide by the provisions of Rule 32(f) of the Federal Rules of Criminal Procedure. The attorneys acknowledge their obligation to use good-faith efforts to resolve any disputes regarding the Presentence Investigation Report (PSIR) through a presentence conference or other informal procedures.

24. Defendant understands that by pleading guilty he will be convicted, and that any individual convicted who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has explained this consequence of his guilty plea.

*Read by Atty Jeff Bredahl /*
*MTH - 10-26-23*

25. Defendant acknowledges reading and understanding all provisions of the Plea Agreement. Defendant and Defendant's attorney have discussed the case and reviewed the Plea Agreement. They have discussed Defendant's constitutional and other rights, including, but not limited to, Defendant's plea-statement rights under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure.

AGREED:

MAC SCHNEIDER
United States Attorney

Dated: _____

By: ALEXANDER J. STOCK
Assistant United States Attorney

Dated: 10-26-23

MICHAEL TORY HAUGLAND
Defendant

Dated: 10-26-23

JEFF BREDAHL
Attorney for Defendant