IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESSICA MARIE TROTTIER, a/k/a<br>JESSICA MARIE LATTERGRASS,<br><br>Defendant. | Case No. 3:22-cr-184<br><br>**UNITED STATES' OBJECTION TO PROVIDING DEFENDANT WITH DISCOVERY MATERIALS** |

The United States of America objects to Defendant's motion asking for discovery in the jail.[1] Defendant has previously tried to have someone killed multiple times as a result of her review of discovery, and Defendant has continued to attempt to tamper with witnesses while incarcerated even after losing her job in jail and being charged with witness tampering crimes. There are numerous other ways to review discovery with Defendant short of giving her access to discovery in jail.

On May 1, 2024, the Court signed the parties' stipulation regarding discovery. Doc. 765. The order provides for the United States' broad and early disclosure of discovery material *beyond* the requirements of Rule 16. Id. Paragraphs 4 and 5 of the order provide for Defendant's review of all material disclosed, but they prohibit Defendant and third parties from possessing some of the material. Id. Paragraph 5 clarifies the prohibition on

---

[1] The United States made a clerical error in not filing this sooner. Please consider this the United States' response and/or as a Motion to Reconsider. The United States apologizes for this oversight.

Defendant's possession of some material does not apply to any material discoverable under Rule 16. Id.

Defendant's previous counsel obtained an ex parte order to provide Defendant discovery in the jail on February 15, 2023. Doc. 322. On March 2, 2023, the United States filed a motion to revoke that order due to Defendant's attempts at tampering with witnesses based on a review of her jail calls. Doc. 331 (Sealed). In its motion, the United States noted Defendant tried to have her methamphetamine suppliers murder her codefendant. Doc. 331, p. 4. Specifically, Defendant was arrested with a quantity of methamphetamine during a search warrant on February 24, 2022. State v. Trottier, Cass County, ND, Case 09-2022-CR-809. The discovery in that case contained her coconspirator's statements/confession that led to Trottier's arrest. On August 6, 2022, Defendant tried to get her methamphetamine suppliers from California to murder this coconspirator at one of her residences in Fargo for being a "rat." This planned murder was surveilled and photographed by law enforcement, and Defendant's suppliers ultimately decided not to murder the coconspirator.

After Defendant's plan fell through, law enforcement intercepted text messages between her and her suppliers. Codefendant Arturo Guzman texted Defendant, "Hey Jess, we are coming into town. We are going to have to leave very quick 'cause shit's going down at the border and we have to go pay for our load." Defendant told Guzman, "I'll pay you guys, that's not the issue. You guys said u was gonna do something n it's not done. I don't want no rat around me." After some back and forth, Guzman told Defendant, "look you little weasel, I'm done playing your fucking games. You better have my money or

2

murder for hire is a motherfucker as far as a charge especially when the victim is right next to me and your little plan didn't go through." "You want to fuck around and threaten, don't forget you wanted this dude dead, and that won't look good to a jury."

On August 9, 2022, three days after her failed murder plot, Defendant tried to get others to commit the murder for her in Grand Forks. In an intercepted call to unindicted coconspirator Jason Short (deceased), Defendant said she wanted Short to tie up her coconspirator and put him in the trunk, indicating, "I don't even care if he disappears." She then told codefendant Matt Wood that this coconspirator was a "little rat bitch motherfucker." When Wood asked Defendant if she was able to locate this "rat," she said, "no, but I got a girl that's hitting him up on messenger." Wood then asked, "so what happened?" Trottier replied, "My baby got a .45 Glock." Wood then said, "okay, good. And you told her what to do with it?" before suggesting she "turn it sideways and shove it up their ass." Because law enforcement was aware of the new murder plot, they were able to stop it from happening. Law enforcement eventually arrested this coconspirator. Within his cell phone were Facebook messages corroborating the fact that Trottier indeed had someone "hit him up on messenger" in an attempt to lure him to a hotel to be murdered.

As mentioned in the United States' earlier filing, Defendant has continued her attempts to tamper with witnesses while in jail. Defendant previously worked in the laundry room at the Cass County Jail. Agents monitored her jail calls and discovered a plot in February 2023 with unindicted coconspirator Amanda Henley to communicate with other coconspirators in custody to convince them not to talk to law enforcement. For example, in one call, Henley asked Defendant how codefendant Brendan Moore (recently sentenced

to 180 months) got her phone number. Defendant replied she didn't speak to Moore, but "I do his laundry." Henley replied, "Okay, I guess that you're smarter than they are."

Trottier then asked Henley what codefendant Michael Gourneau had to say, and Henley relayed that Gourneau said the coconspirator she earlier wanted murdered was in jail with him. Defendant then asked Henley to find out what codefendant Michael Gourneau's laundry bag number was, presumably so she could put communications inside his laundry like she did with Brendan Moore. She also told Henley to have Gourneau "write a letter to you and you can mail it to me." Defendant told Henley to "tell him I said I love him and stay strong." In another call, Trottier told Henley "Just write Mikey G. a letter for me and tell him, I'm begging him with all my heart and soul, just give it a little bit more time." Henley told Defendant she didn't think Gourneau was "gonna cave," and Trottier said "because he's a solid motherfucker, that's why." In yet another call, Defendant gave Henley codefendant Brett Hoiby's address and said, "just write him a letter and tell him who you are, and what's up, and this and that."

These jail calls showed Defendant was using her position as a laundry room worker to communicate with other coconspirators, and she was also utilizing Henley to write letters and otherwise communicate with coconspirators in an effort to get them not to talk to law enforcement. When law enforcement became aware of Defendant's continued attempts to manipulate and control coconspirators, she was promptly fired from her position in the laundry room. She then filed a grievance with the jail confirming she has been attempting to tamper with witnesses. "I don't need to contact [coconspirators] thru laundry when we have a friend who visits all of us on the kiosk."

4

Inmate Name: Trottier
(Please Print)

Date: 2-23-23   Time: 4:00pm

Housing Unit/Cell Number: H MAIN 213

Describe specific circumstances and details of the grievance including dates, times, locations, and individuals involved:

This is for Lt. Ray, I have 2 issues –
1. The medical charging me for Meds, when I'm USM Hold. The new policy is we pay for Dr Visits not meds. If this don't get resolved I will have my Fed Lawyer look into this & I will sue. I'm done being disrespected by med staff & K Co Dodge.
2. I lost my job cause the USM told the jail I was commucating to my Co-defendant thru Laundry. When in fact I don't need to contact them thru laundry when We have a friend who visits all of us on the Kiosk please check it out and another thing is I was never caught doing anything wrong through Laundry. What ever happened to Inocent until proven guilty?

SIGNATURE: Q Trotts          Thank you
DATE: 2-23-23

    This friend, based on intercepted communications, is Amanda Henley. A review of Trottier's jail communications with Amanda Henley shows Henley pretends to have legal knowledge but in fact displays just enough of a rough understanding of sovereign citizen

5

buzzwords to have Defendant fooled into thinking the charges are fake, and Defendant is only in jail so various government officials (the Cass County Jail, the Magistrate Judge, and the prosecutor) can for some inexplicable reason claim her as some sort of dependent for tax purposes. In fact, Defendant sent tax documents to the United States, indicating "you have 72 hours to respond."

For these reasons, the United States objected to Defendant having discovery while in jail. The Court agreed and revoked Defendant's access to discovery while in jail. Doc. 341. The Grand Jury subsequently returned a superseding indictment against Defendant for tampering with witnesses. Doc. 628.

Despite losing her job in the jail, and despite being charged with witness tampering, Defendant continues her efforts to tamper with Ms. Henley, as evidenced by her two letters she sent to codefendant Brett Hoiby in March 2024. In the first letter, Defendant identified herself as "Tanya Rainbow" and told Hoiby, "Hey it's your best friend. Can you please call Amanda." "We need your help."

Name: Tanya Rainbow
Cass County Jail
450 34th St. S
Fargo, ND 58103

neopost
03/11/2024
US POSTAGE $000.5
ZIP 58
041L12

Brett Hoiby



In the second letter two weeks later, Defendant abandoned her attempt at concealing her identity and wrote down her real name.

3-27-24

Hey bro how you doing? I'm not so good. I really need some help to get Amanda here, Do you remember her? She is still helping me fight this Case. She is back in Kansas But I need her here to file my Habeus Corpus. in the 8th Curicut Court in St. Paul MN. I'm still fighting I haven't been arraigned yet I won't put a not guilty plea in cause they can't make me + they can't make me understand If you Call Amanda she will explain more to you. But I don't + Won't talk to my lawyer or the Feds just Know that Bro. Here's Amanda's info 701-291-6965 or 913-963-8441 + her FB name is Amanda B Greatful. Please Bro Call her + help me I need Some $ on my books go to inmate canteen.com or you can



Cash app to her its $anticopsuperstar. Bro we gonna get out of this shit please still believe in me + Amanda + please help me I'm begging

Love + miss you Bro

Jess

P.S. Fuck the Feds

Based on these continued communications and attempt to tamper with witnesses despite losing her job and being charged with witness tampering, Defendant will not stop attempting to tamper with witnesses. She will go so far as to try to have witnesses killed if she believes they are a "rat." Allowing Defendant access to discovery while in jail will subject more witnesses and coconspirators to tampering attempts.

Defendant generally has a right to review discoverable materials, United States v. Hung, 667 F.2d 1105, 1108 (4th Cir. 1981), but the right to review does not mandate a

detainee's *possession* of discovery materials. E.g., United States v. Ruth, No. 1:18-CR-00004 EAW, 2020 WL 3063939, at *3 (W.D.N.Y. June 9, 2020) ("[R]easonable restrictions on Defendant's access to the materials in a jail setting are . . . appropriate."); United States v. Gerard, No. 3:16-CR-270, 2018 WL 4113351, at *3 (W.D.N.C. Aug. 29, 2018) (denying criminal defendant's motion to retain and review all discovery materials while in jail); Johnson v. United States, No. 2:07-CR-00924-DCN-3, 2014 WL 295157, at *5 (D.S.C. Jan. 27, 2014) (opining that it was not improper to restrain counsel from leaving discovery materials with the petitioner in jail to safeguard the material contained therein); cf. In re Bragg, No. 1:11CR00026-002, 2012 WL 566958, at *3 (W.D. Va. Feb. 21, 2012) (noting the standard practice is to restrict discovery materials to the possession of defense counsel); cf. United States v. Youker, No. 2:14-CR-0152-SMJ-1, 2015 WL 13864169, at *2 (E.D. Wash. Apr. 30, 2015) (noting while a pro se defendant is entitled to review discovery, this does not mean he is entitled to all discovery materials in pretrial detention, especially given that the court appointed the defendant standby counsel).

Importantly, Fed. R. Crim. P. 16(d)(1) "requires only 'good cause' to modify or restrict discovery." United States v. Driscoll, 122 F.4th 1067, 1069 (8th Cir. 2024). As discussed above, there is more than enough good cause to restrict discovery in this case given Defendant's actions. By way of example, the Eighth Circuit recently found South Dakota's local rule restricting discovery from being with defendants in jail satisfies the "good cause" requirement on its own because it protects "the safety of federal defendants and the integrity of ongoing investigations and related prosecutions." Id. at 1070. In addition, and "[m]ost importantly, a cooperating co-defendant had testified that [appellant]

10

shared information from a proffer report, demonstrating the good cause requirement." Id. Here, not only has Defendant shared information about cooperating witnesses, she's tried to have them murdered and continues her tampering attempt despite the negative consequences.

In contrast to the discovery stipulation, Rule 16 "does not cover testimony by a government witness as to an oral statement by a conspirator in the course of the conspiracy. It covers oral statements made by defendant 'in response to interrogation by any person then known to the defendant to be a government agent.'" United States v. Hoelscher, 914 F.2d 1527, 1535 (8th Cir. 1990) (quoting United States v. Vitale, 728 F.2d 1090, 1093–94 (8th Cir. 1984)). Rule 16 "stresses that only 'statements made by the defendant' are discoverable." United States v. Manthei, 979 F.2d 124, 126 (8th Cir. 1992). Further, and more importantly, Rule 16 specifically notes this rule ***does not*** authorize the discovery or inspection of statements made by prospective government witnesses, except as provided in 18 U.S.C. § 3500 (the Jencks Act). See Fed. R. Crim. P. 16(a)(2). Accordingly, a federal criminal defendant generally has no right to know about government witnesses prior to trial. United States v. Polk, 715 F.3d 238, 249 (8th Cir. 2013). The United States is not willing to allow Defendant herself to have access to materials beyond the scope of Rule 16, however, due to the significant safety concerns should all materials be available at Defendant's disposal, especially while she is incarcerated with the materials in black and white at her fingertips. Allowing Defendant access to discovery materials in jail eliminates the United States' ability to control discovery, given the safety and security concerns, as authorized by the applicable rules, statutes, and Constitution.

The Government understands it must honor Defendant's constitutional due process rights under Brady v. Maryland, 373 U.S. 83 (1963), which requires the prosecutor to turn over to the defense evidence favorable to the accused, even though it is not subject to discovery under Fed. R. Crim. P. 16(a), as such evidence may undermine the confidence in the outcome of the trial. This includes impeachment material related to government witnesses. Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667 (1985). However, the government is the sole judge of what evidence in its possession is subject to disclosure under Brady, not the defendant. United States v. Presser, 844 F.2d 1275, 1281 (6th Cir. 1988).

The Sixth Circuit Court of Appeals in vacating a district court's order for pre-trial disclosure of Jencks Act (18 U.S.C. § 3500) material noted the following:

> We also find support for our decision in the fact that providing the defense with such a broad right of pre-trial discovery would vitiate an important function of the Jencks Act, the protection of potential government witnesses from threats of harm or other intimidation before the witnesses testify at trial. [citations omitted] Clearly, the need to protect witnesses exists whether the witnesses are part of the government's case-in-chief or part of its potential evidence to rebut a possible defense. Accordingly, we conclude that the government cannot be compelled to disclose impeachment material which would be covered by the Jencks Act relating to any potential government witness, whether it be a witness in the case-in-chief or a rebuttal witness. Further, the government need not disclose impeaching material in its possession relating to any potential defense witness where that impeaching material does not meet the Brady test of being material and exculpatory.

Presser, 844 F.2d at 1285.

In a separate context, the United States Supreme Court recognized this essential government interest as well. In Roviaro v. United States, 353 U.S. 53 (1957), the Court

explained the rationale underlying the government's privilege to withhold the identities of its informants, as follows:

> What is usually referred to as the informer's privilege is in reality the government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of the law. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

Roviaro, 353 U.S. at 59.

Under the stipulated discovery order, the United States has provided materials beyond the requirements of Rule 16 and Jencks, including cooperators' statements. Allowing this discovery in the jail facility will give Defendant nearly unlimited access to the names of individuals who have cooperated with law enforcement, the specifics of the information provided, and the names of those cooperators implicated. She's already shown—and continues to show—what she'll do when she gets this information. Attempts by the Court to limit how Defendant accesses discovery do not alleviate concerns. In fact, even operating under the standard discovery stipulation, defendants still find ways to possess and disseminate discovery materials while in jail, and they do so with the specific purpose to tamper with witnesses. More so, that information will be contained on official government documents which, if disseminated, will carry substantially more weight in identifying cooperating individuals. Allowing Defendant possession of these discovery materials in a jail setting impermissibly removes control from the government in providing

13

discovery (where the statutes and rules place it) and subjects cooperators to potential intimidation and threats beyond what has already occurred.

The provision of a "clean" computer doesn't solve the issue or concerns outlined above, as inmates are adept at secreting devices that can be used to record, photograph, and/or copy discovery materials viewed on the computer. In fact, many defendants simply purchase a flash drive at the commissary, load it with discovery, and mail it out. The danger presented to cooperating individuals is enhanced where their actual statements on a Government agency report are distributed to the public via social media or otherwise. See United States v. Farrell, 1:19-cr-00045-DMT, Docs. 223, 231, 239, 256, 258, 268 (D.N.D. Apr. 14, 2021); see also, United States v. Pinto, 3:18-cr-00054-PDW; 3:20-cr-00011-PDW (D.N.D. July 9, 2021); see also United States v. Rambus, 3:21-cr-36; see also United States v. Mendez, 3:23-cr-45 (witness tampering conspiracy involving beating and stabbing a cooperator in the neck with a pencil).

There are other options available to defense counsel beyond providing discovery in the jail, including: (1) meeting with the client and reviewing in person; (2) asking for resources from the court (i.e., an investigator) who could do so; (3) providing a summary of the information to the defendant; (4) allowing the United States to conduct a reverse proffer of Defendant; and (5) moving Defendant from Cass County to Burleigh/Morton so she can be closer to counsel to facilitate review of discovery. Each of those options are yet available, and, at least to the United States' knowledge, have not been attempted.

Defendant has tried to commit murder based on information contained in her discovery materials, and she is continuing her attempts to tamper with witnesses and

14

coconspirators. Therefore, the United States objects to providing her with discovery in jail. There may be a solution here, but the United States does not believe providing Defendant access to discovery materials in jail is appropriate.

Dated: January 6, 2025.

                        MAC SCHNEIDER
                        United States Attorney

By:   */s/ Alexander J. Stock*
      ALEXANDER J. STOCK
      Assistant United States Attorney
      ND Bar ID 07979
      655 First Avenue North, Suite 250
      Fargo, ND  58102-4932
      (701) 297-7400
      alexander.stock@usdoj.gov
      Attorney for United States

By:   */s/ Brett M. Shasky*
      BRETT M. SHASKY
      Assistant United States Attorney
      ND Bar ID 04711
      655 First Avenue North, Suite 250
      Fargo, ND  58102-4932
      (701) 297-7400
      brett.shasky@usdoj.gov
      Attorney for United States

By:   */s/ Dawn M. Deitz*
      DAWN M. DEITZ
      Assistant United States Attorney
      ND Bar ID 06534
      655 First Avenue North, Suite 250
      Fargo, ND  58102-4932
      (701) 297-7400
      dawn.deitz@usdoj.gov
      Attorney for United States