UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SEAN COMBS,<br>  a/k/a "Puff Daddy,"<br>  a/k/a "P. Diddy,"<br>  a/k/a "Diddy,"<br>  a/k/a "PD,"<br>  a/k/a "Love,"<br><br>               Defendant. | **SEALED INDICTMENT**<br><br>24 Cr.<br><br>**24 CRIM 542** |

## COUNT ONE
### (Racketeering Conspiracy)

The Grand Jury charges:

#### Overview

1. For decades, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, abused, threatened, and coerced women and others around him to fulfill his sexual desires, protect his reputation, and conceal his conduct. To do so, COMBS relied on the employees, resources, and influence of the multi-faceted business empire that he led and controlled—creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex trafficking, forced labor, kidnapping, arson, bribery, and obstruction of justice.

2. SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy

Entertainment, Combs Enterprises, and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business included, among other things, record labels, a recording studio, an apparel line, an alcoholic spirits business, a marketing agency, and a television network and media company.

3. At all times relevant to this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, engaged in a persistent and pervasive pattern of abuse toward women and other individuals. This abuse was, at times, verbal, emotional, physical, and sexual. As part of his pattern of abuse, COMBS manipulated women to participate in highly orchestrated performances of sexual activity with male commercial sex workers. At times, COMBS, and others acting at his direction, made arrangements for women and commercial sex workers to fly to COMBS' location. COMBS ensured participation from the women by, among other things, obtaining and distributing narcotics to them, controlling their careers, leveraging his financial support and threatening to cut off the same, and using intimidation and violence.

4. Physical abuse by SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, was recurrent and widely known. On numerous occasions from at least in or about 2009 and continuing for years, COMBS assaulted women by, among other things, striking, punching, dragging, throwing objects at, and kicking them. These assaults were, at times, witnessed by others and included one instance at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where COMBS kicked, dragged, and threw a vase at a woman as she was attempting to leave. When a member of the hotel security staff intervened, COMBS attempted to bribe the staff member to ensure silence.

2

COMBS' violence was also not limited to these women. It extended to his employees, witnesses to his abuse, and others.

5. SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, used the Combs Business, including certain employees, to carry out, facilitate, and cover up his abuse and commercial sex. Those employees—including security staff, household staff, personal assistants, and high-ranking supervisors—and other close associates acted as COMBS' intermediaries, and their conduct was facilitated and assisted by COMBS' control of the Combs Business.

### The Combs Enterprise

6. From at least in or about 2008, through on or about the date of the filing of this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, and others known and unknown, were members and associates of a criminal organization (the "Combs Enterprise" or the "Enterprise"). Members and associates of the Combs Enterprise engaged in, and attempted to engage in, among other activities, sex trafficking, forced labor, interstate transportation for purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

7. The Combs Enterprise, including its leadership, its members, and its associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity. The Combs Enterprise consisted of: (i) SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant; (ii) entities within the Combs Business, including but not limited to Bad

3

Boy Entertainment, Combs Enterprises, and Combs Global; (iii) individuals employed by and associated with the Combs Business; and (iv) others known and unknown.

8. The Combs Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Combs Enterprise. The Combs Enterprise was engaged in, and its activities affected, interstate and foreign commerce. The Combs Enterprise operated in the Southern District of New York and elsewhere.

9. At all times relevant to this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, was the leader of the Combs Enterprise.

10. SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, and others known and unknown, participated in unlawful and other activities related to the conduct of the Combs Enterprise's affairs. These individuals included certain Combs Business employees, such as members of COMBS' security staff, household staff, personal assistants, and high-ranking supervisors, as well as other close associates of COMBS.

## Purposes of the Combs Enterprise

11. The purposes of the Combs Enterprise included the following:

   a. Operating a global business in the media, entertainment, and lifestyle industries, including, among other things, record labels, a recording studio, an apparel line, an alcoholic spirits business, a marketing agency, and a television network and media company;

   b. Preserving, protecting, promoting, and enhancing the power, reputation, and brand of SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, as a musician, entrepreneur, and figure in the entertainment industry;

    c.    Enriching members and associates of the Enterprise, including its leader, COMBS, and in particular those who demonstrated loyalty to COMBS and willingness to conceal his crimes;

    d.    Preserving, protecting, promoting, and enhancing the power of the Combs Enterprise, including the power of its leader, COMBS, through violence, use of firearms, threats of violence, coercion, and verbal, emotional, physical, and sexual abuse;

    e.    Fulfilling the personal desires of COMBS, particularly those related to COMBS' sexual gratification, including through the exploitation of women and the use of commercial sex workers;

    f.    Enabling COMBS and other members and associates of the Combs Enterprise to engage in unlawful acts of violence, including sexual violence; sex trafficking; forced labor; interstate transportation for purposes of prostitution; coercion and enticement to engage in prostitution; narcotics distribution; and other crimes, and concealing the commission of such acts;

    g.    Securing absolute loyalty from members of the Combs Enterprise, including through acts of violence and threats; and

    h.    Protecting the Combs Enterprise and its members and associates, including COMBS, from detection and prosecution by law enforcement authorities through acts of intimidation, manipulation, bribery, and threats of retaliation against individuals who witnessed the crimes committed by members and associates of the Enterprise.

Means and Methods of the Enterprise

12.    Among the means and methods by which SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, and other members and

associates of the Combs Enterprise conducted and participated in the conduct of the affairs of the Combs Enterprise included the following:

      a.     COMBS, and other members and associates of the Combs Enterprise, wielded the power and prestige of COMBS' role at the Combs Business to intimidate, threaten, and lure female victims into COMBS' orbit, often under the pretense of a romantic relationship. COMBS then used force, threats of force, and coercion, to cause victims to engage in extended sex acts with male commercial sex workers that COMBS referred to as, among other things, "Freak Offs." Freak Offs were elaborate and produced sex performances that COMBS arranged, directed, masturbated during, and often electronically recorded. In arranging these Freak Offs, COMBS, with the assistance of members and associates of the Combs Enterprise, transported, and caused to be transported, commercial sex workers across state lines and internationally. Freak Offs occurred regularly, sometimes lasted multiple days, and often involved multiple commercial sex workers. During Freak Offs, COMBS distributed a variety of controlled substances to victims, in part to keep the victims obedient and compliant. Sometimes unbeknownst to the victims, COMBS kept videos he filmed of victims engaging in sex acts with commercial sex workers. After Freak Offs, COMBS and the victims typically received IV fluids to recover from the physical exertion and drug use.

      b.     Members and associates of the Combs Enterprise, including high-ranking supervisors, security staff, household staff, personal assistants, and other Combs Business employees, facilitated the Freak Offs by, among other things, booking hotel rooms for the Freak Offs; stocking the hotel rooms in advance with the required Freak Off supplies, including controlled substances, baby oil, lubricant, extra linens, and lighting; cleaning the hotel rooms after the Freak Offs to try to mitigate room damage; arranging for travel for victims, commercial sex

workers, and COMBS to and from Freak Offs; resupplying COMBS with requested supplies; delivering large sums of cash to COMBS to pay the commercial sex workers; and scheduling the delivery of IV fluids. In or about March 2024, during searches of COMBS' residences in Miami, Florida and Los Angeles, California, law enforcement seized various Freak Off supplies, including narcotics and more than 1,000 bottles of baby oil and lubricant.

c. COMBS subjected victims to physical, emotional, and verbal abuse to cause the victims to engage in Freak Offs. COMBS maintained control over his victims through, among other things, physical violence, promises of career opportunities, granting and threatening to withhold financial support, and by other coercive means, including tracking their whereabouts, dictating the victims' appearance, monitoring their medical records, controlling their housing, and supplying them with controlled substances. During and separate from Freak Offs, COMBS, among other things, hit, kicked, threw objects at, and dragged victims, at times, by their hair. These assaults often resulted in injuries that took days or weeks to heal. COMBS also threatened victims' careers and livelihoods, including if they resisted participating in Freak Offs. Victims believed they could not refuse COMBS' demands without risking their financial or job security or without repercussions in the form of physical or emotional abuse. COMBS also used the sensitive, embarrassing, and incriminating recordings that he made during Freak Offs as collateral to ensure the continued obedience and silence of the victims.

d. Members and associates of the Combs Enterprise, including COMBS' security personnel, at times carried firearms. On more than one occasion, COMBS himself carried or brandished firearms to intimidate and threaten others, including victims of and witnesses to his abuse. In or about March 2024, during searches of COMBS' residences in Miami, Florida and

7

Los Angeles, California, law enforcement seized firearms and ammunition, including three AR-15s with defaced serial numbers, as well as a drum magazine.

  e. Members and associates of the Combs Enterprise enabled COMBS' control over victims by following his directions regarding financial payments to victims, advancing or suppressing the victims' career opportunities, and acquiring the controlled substances COMBS used to keep the victims compliant. Members and associates of the Combs Enterprise at times witnessed COMBS' violence toward the victims, or the victims' injuries caused by Combs, without intervening. Instead, members and associates of the Combs Enterprise helped conceal the violence and abuse by, among other things, assisting COMBS in monitoring and preventing victims from leaving locations, such as hotels or COMBS' residences. These occasions included instances in which a victim was required to remain in hiding—sometimes for several days at a time—to recover from injuries COMBS inflicted, without being publicly observed. Members and associates of the Combs Enterprise also assisted COMBS in locating and contacting victims who attempted to flee his abuse.

  f. When employees, witnesses to his abuse, or others threatened COMBS' authority or reputation, COMBS and members and associates of the Enterprise engaged in acts of violence, threats of violence, threats of financial and reputational harm, and verbal abuse. These acts of violence included kidnapping and arson. In addition, on multiple occasions, COMBS threw both objects and people, as well as hit, dragged, choked, and shoved others.

  g. When COMBS' authority or reputation was threatened by the possibility of negative publicity or legal or law enforcement action against him, including in or about late 2023 following public allegations of COMBS' crimes, COMBS and members and associates of the Enterprise pressured witnesses and victims, including through attempted bribery, to stay silent and

not report what they experienced or knew to law enforcement. On phone calls, COMBS and other members and associates of the Enterprise, among other things, provided these victims and witnesses with a false narrative of events in an effort to conceal COMBS' crimes. COMBS caused these calls to be recorded on at least two occasions.

### The Racketeering Conspiracy

13.   From at least in or about 2008, through on or about the date of the filing of this Indictment, in the Southern District of New York and elsewhere, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, and others known and unknown, being persons employed by and associated with the Combs Enterprise described in paragraphs 6 through 12 of this Indictment, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Combs Enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of:

   a.   multiple acts involving kidnapping, chargeable under the following provisions of state law: California Penal Code § 207 (kidnapping), California Penal Code §§ 21(a), 664 (attempt), California Penal Code § 31 (aiding and abetting), and California Penal Code § 182 (conspiracy);

   b.   multiple acts involving arson, chargeable under the following provisions of state law: California Penal Code § 451 (arson), California Penal Code §§ 21(a), 664 (attempt), California Penal Code § 31 (aiding and abetting), and California Penal Code § 182 (conspiracy);

Case 3:22-cr-00184-PDW   Document 1020-1   Filed 02/03/25   Page 10 of 15

Case 1:24-cr-00542-AS   Document 2   Filed 09/12/24   Page 10 of 14

   c. multiple acts involving bribery, chargeable under the following provisions of state law: California Penal Code § 137(a) (bribery of a witness), California Penal Code §§ 21(a), 664 (attempt), California Penal Code § 31 (aiding and abetting), and California Penal Code § 182 (conspiracy);

   d. multiple acts indictable under Title 18, United States Code, Section 1512 (relating to tampering with a witness, victim, or an informant);

   e. multiple acts indictable under Title 18, United States Code, Sections 1589 and 2 (relating to forced labor);

   f. multiple acts indictable under Title 18, United States Code, Sections 1591 and 2 (relating to sex trafficking);

   g. multiple acts indictable under Title 18, United States Code, Sections 2421, 2422, and 2 (relating to transportation and inducement to travel for purposes of prostitution and other illegal sexual activities); and

   h. multiple offenses involving the possession with intent to distribute, or distribution of narcotics and controlled substances, including cocaine, oxycodone, alprazolam, 3,4-Methylenedioxymethamphetamine, 4-Bromo-2,5-dimethoxyphenethylamine, gamma hydroxybutyric acid, and ketamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), (b)(1)(E), (b)(2), and 846 (distribution and possession with intent to distribute and conspiracy to do the same), and Title 18, United States Code, Section 2 (aiding, abetting, and willfully causing).

  14. It was a part of the conspiracy that SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, agreed that a conspirator would

commit at least two acts of racketeering activity in the conduct of the affairs of the Combs Enterprise.

## Notice of Special Sentencing Factor

15. From at least in or about 2009, up to and including in or about 2018, in the Southern District of New York and elsewhere, as part of his agreement to conduct and participate in the conduct of the affairs of the Combs Enterprise through a pattern of racketeering activity, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, agreed to, in and affecting interstate and foreign commerce, knowingly recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit by any means a person, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, as described in Title 18, United States Code, Section 1591(e)(2), and any combination of such means, would be used to cause the person to engage in a commercial sex act, in violation of Title 18, United States Code, Section 1591(a)(1) and (b)(1).

(Title 18, United States Code, Section 1962(d).)

## COUNT TWO
### (Sex Trafficking by Force, Fraud, or Coercion)
### (Victim-1)

The Grand Jury further charges:

16. From at least in or about 2009, up to and including in or about 2018, in the Southern District of New York and elsewhere, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, in and affecting interstate and foreign commerce, knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and solicited by any means a person, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, as described in Title 18, United

11

States Code, Section 1591(e)(2), and any combination of such means, would be used to cause the person to engage in a commercial sex act, and attempted, aided and abetted, and willfully caused the same, to wit, COMBS recruited, enticed, harbored, transported, and maintained a person ("Victim-1"), and attempted, aided and abetted, and willfully caused Victim-1, to engage in commercial sex acts, knowing and in reckless disregard of the fact that Victim-1 was engaging in commercial sex acts as a result of force, fraud, and coercion.

(Title 18, United States Code, Sections 1591(a)(1), (b)(1), 1594(a), and 2.)

## COUNT THREE
### (Transportation to Engage in Prostitution)

The Grand Jury further charges:

17.   From at least in or about 2009, up to and including in or about 2024, in the Southern District of New York and elsewhere, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, knowingly transported an individual in interstate and foreign commerce with intent that the individual engage in prostitution, and attempted, aided and abetted, and willfully caused the same, to wit, COMBS transported, aided and abetted, and willfully caused the transportation of female victims and commercial sex workers in interstate and foreign commerce on multiple occasions with the intent that they engage in prostitution.

(Title 18, United States Code, Sections 2421(a) and 2.)

## FORFEITURE ALLEGATIONS

18.   As a result of committing the offense alleged in Count One of this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963, any and all interests the defendant acquired or maintained in violation of Title 18, United

States Code, Section 1962; any and all interests in, securities of, claims against, and property or contractual rights of any kind affording a source of influence over, the enterprise named and described herein which the defendant established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and any and all property constituting and derived from proceeds obtained, directly and indirectly, said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

19.    As a result of committing the offense alleged in Count Two of this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1594, any and all property, real and personal, involved in, used, or intended to be used to commit or to facilitate the commission of said offense and any and all property traceable to such property; any and all property, real and personal, constituting or derived from proceeds obtained, directly or indirectly, as a result of said offense, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense and proceeds traceable to the commission of said offense.

20.    As a result of committing the offense alleged in Count Three of this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, shall forfeit to the United States, pursuant to (i) Title 18, United States Code, Section 2428, any and all property, real and personal, constituting or derived from proceeds obtained, directly or indirectly, as a result of said offense; and any and all property, real or personal, that was used or intended to be used to commit or facilitate the commission of said offense, and (ii) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any

and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

### Substitute Assets Provision

21. If any of the above described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third person;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

> (Title 18, United States Code, Section 981;
> Title 18, United States Code, Section 1594;
> Title 18, United States Code, Section 1963;
> Title 18, United States Code, Section 2428;
> Title 21, United States Code, Section 853;
> Title 28, United States Code, Section 2461.)



FOREPERSON

Damian Williams
DAMIAN WILLIAMS
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA, | |
|---|---|
| -against- | 24-CR-542 (AS) |
| SEAN COMBS, | ORDER |
| Defendant. | |

ARUN SUBRAMANIAN, United States District Judge:

The Court is in receipt of Defendant's application regarding Discovery Laptop access and Defendant's attorney-visitation forms. Dkt. 95. Having reviewed the parties' submissions, the Court orders as follows:

1. The MDC is ordered not to turn over Defendant's attorney-visitation forms to the Government.
2. The MDC is ordered to give Defendant access to the Discovery Laptop seven days per week from 8:00 AM to 3:30 PM. This can be in his unit's visiting room or in his unit's VTC room.
3. The purpose of the Discovery Laptop is to review discovery, not to take or store notes. It is the Court's understanding that the laptop has been pre-loaded with discovery materials but does not allow any functionality beyond reviewing those materials.

If Defendant wishes for broader access to the Discovery Laptop, his counsel should discuss the issue with the Government, which should consider any reasonable proposals in good faith and work with BOP counsel and MDC staff to effectuate them. If there are further disputes, the Court will consider adjustments to this order. However, any proposal should be mindful of the Court's protective order, the nature of the materials on the Discovery Laptop, and the fact that Defendant is not isolated in his unit.

SO ORDERED.

Dated: December 12, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge